UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 8:23-cr-210-CEH-AEP

SARAH ANN BIRDSELL

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits its sentencing memorandum. As further explained below, and pursuant to 18 U.S.C. § 3553(a), the United States respectfully submits that a guideline-sentence of 72 months is appropriate in this case.

**I.   Procedural History**

On June 27, 2023, a federal grand jury in the Middle District of Florida, Tampa Division, returned an indictment charging the defendant, Sarah Ann Birdsell, with one count of Possession of Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(3), two counts of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1), and two counts of Possession of Stolen Mail, in violation of 18 U.S.C. § 1708. Doc. 1. Birdsell made her initial appearance in Tampa Florida, on August 8, 2023, and the court ordered her detained pending trial. Docs. 14, 17. On October 18, 2023, Birdsell pleaded guilty to Counts One, Two, and Three of the indictment pursuant to a written plea agreement. Docs. 22, 24. The Court has scheduled sentencing to take place on February 2, 2024. Doc. 32.

## II. Presentence Investigation Report

On January 26, 2024, the U.S. Probation Office issued its final Presentence Investigation Report ("PSR"). Doc. 33. It determined Birdsell's applicable guideline-range for the underlying offenses to be 30 to 37 months for Count One and a consecutive 48 months for Counts Two and Three, based on an adjusted total-offense level of 12 and criminal history category of VI. *Id.* at ¶ 117. Birdsell has two factual objections to the PSR and two legal objections. The United States has no remaining objections to the PSR. For the reasons that follow, this Court should overrule Birdsell's objections and adopt the remainder of PSR's facts and guideline-calculation.

### A. Factual Objections

Birdsell first objects to certain portions of the factual recitations in paragraphs 55, 58, 59, 60 and 61 of the PSR. According to U.S. Probation, the underlying information was derived from arrest reports and court records. Birdsell also objects to paragraph 89 of the PSR, and asserts that it incorrectly identifies her maiden name as Smallwood. According to U.S. probation, the maiden name provided was taken from Birdsell's State of Florida birth certificate. Defense counsel has presented no evidence contradicting the arrest reports and court records routinely relied upon by U.S. Probation or the birth record from the Florida Department of Health, Bureau of Vital Statistics. Accordingly, these objections are due to be overruled.

**B.     Legal Objections**

**1.     The Eleventh Circuit's Binding Precedents Defer to the Intended Loss Rule.**

Section 2B1.1 requires the Court to determine "loss" in this case. Application Note 3(A) explains that "loss is the greater of actual loss or intended loss." Section 2B1.1, comment. (n.3(A)). Actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense," while intended loss is the "pecuniary harm that the defendant purposely sought to inflict," including "intended pecuniary harm that would have been impossible or unlikely to occur." *Id*.

In *United States v. Dupree*, the Eleventh Circuit held that after *Kisor v. Wilkie*, 139 S. Ct. 2400, courts may defer to the Guideline commentary only when Guideline text is "genuinely ambiguous," and after "exhaust[ing] all the 'traditional tools' of construction." *Dupree*, 57 F.4th 1269, 1275–78 (quoting *Kisor*, 139 S. Ct. at 2415). Relying primarily on *Kisor* and *Dupree*, Birdsell argues that "a simple look at the guideline text shows that it unambiguously says 'loss,' not 'intended loss.'" *See* defendant's sealed "Sentencing Memorandum in Support of Loss Calculation Guidelines Objection and Request for Concurrent Sentence," p. 13. This determination, unfortunately, is not that simple.

Prior to *Dupree*, the Eleventh Circuit "require[d] district courts to consider the intended loss amount when calculating the loss attributable to the defendant." *United States v. Verdeza*, 69 F.4th 780, 794 (11th Cir. 2023); *see also United States v. Moss,* 34

F.4th 1176, 1190 (11th Cir. 2022) (holding that § 2B1.1 and its commentary is "binding on the courts" because it does not "contradict the plain meaning of the text of the Guidelines)" (quoting *United States v. Wilks*, 464 F.3d 1240, 1245 (11th Cir. 2006)); *United States v. Moran*, 778 F.3d 942, 973 (11th Cir. 2015); *United States v. Orton*, 73 F.3d 331, 333 (11th Cir. 1996).

Under the prior panel precedent rule, district courts are required to follow the holding of *Moss* and others when interpreting § 2B1.1 "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by [the Eleventh Circuit] sitting en banc." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

*Dupree* applied *Kisor's* framework to the Guidelines in answering the narrow question of whether a conspiracy crime could qualify as a "controlled substance offense" under § 4B1.2(b). It did not invalidate *Moss* or undermine it to the point of abrogation. The *Dupree* court even expressed wariness of its decision being used as a vehicle to overrule every Eleventh Circuit case deferring to the Guidelines commentary accompanying other chapters or sections. *See Dupree*, 57 F.4th at 1287 (Grant, J. concurring) (refusing to read the majority opinion to presumptively overrule "every case that has applied the commentary").

To the extent *Dupree* undermines or weakens the reasoning of *Moss*, that still would not and could not justify ignoring binding precedent. *See United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) ("[T]he doctrine of adherence to prior precedent . . . mandates that the intervening Supreme Court [or en banc] case actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior

4

panel.").

In support of her argument, Birdsell further cites to the Third Circuit's decision in *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022), which applied *Kisor* to invalidate Application Note 3(A). It is worth noting that *Banks*' reasoning is at odds with at least one other Circuit. *See United States v. You*, 74 F.4th 378 (6th Cir. 2023) (expressly disagreeing with *Banks*'s conclusion that "loss," as used in § 2B1.1(b)(1), unambiguously means actual loss). But more importantly to the instant case, *Banks* is not controlling, not persuasive, and ultimately irrelevant given the prior precedential decisions from within the Eleventh Circuit.

**2.     Application Note 3(F)(i) is a Permissible, Reasonable, and Appropriate Interpretation of § 2B.1.**

For access device-related offenses, like the instant case, the Guidelines require the use of a formula that the Sentencing Commission has established: § 2B1.1, Application Note 3(F)(i). Birdsell argues that the Court should disregard the Sentencing Commission's directive to use this formula, primarily relying upon the reasoning in *Kisor* and *United States v. Riccardi*, 989 F.3d 476 (6th Cir. 2021).

In *Kisor*, the Supreme Court held that deference to an agency's interpretation of its regulations should be applied only under certain circumstances. Specifically, the Court found that *Kisor* requires three preconditions for such deference: first, "based on indicia like text, structure, history, and purpose," the guideline must have "more than one reasonable meaning," 139 S. Ct. at 2424, second, the application note must offer

5

a "reasonable" interpretation of the disputed term that falls within "the zone of ambiguity," *id*. at 2415–16, and third, the "character and context of the agency interpretation" must show that it is entitled to "controlling weight," *id*. at 2416.

The defendant in *Riccardi* stole 1,322 gift cards with "total face values of $47,000." *Id*. at 486. The Sixth Circuit did not address the defendant's intended loss (or gain) when she stole the cards, but rather focused on the lack of "evidence suggesting that the total 'damage' from this theft approached the $752,500." *Id*. The Sixth Circuit concluded that the access device formula constituted a substantive rule which had not been properly adopted as such. *Id*. at 483. In order to reach that result, the *Riccardi* court disregarded decades of precedent that made clear that loss estimates and formulae, such as that adopted in Application Note 3(F)(i), are appropriate tools for estimating loss.

Application Note 3(F)(i) is entitled to deference under the *Kisor* framework. First, the term "loss" is ambiguous when applied to access device offenses, as it can mean "different things in different contexts." *Riccardi*, 989 F.3d at 486; *see also United States v. Kirilyuk*, 29 F.4th 1128, 1137 (9th Cir. 2021) ("[A] review of dictionaries reveals that 'loss' can have a range of meanings."). The word "loss" may encompass the "detriment or disadvantage involved in being deprived of something" or indirect, intangible, or unrealized losses.

Second, the $500-per-access-device rule fits within the zone of ambiguity, as it is a data-based estimate. Because of the unique difficulty in determining loss in the context of access device theft and fraud cases, an efficient way to ensure uniformity in

the application of § 2B1.1 is to adopt a framework for making the required loss estimate; which is precisely what the Sentencing Commission has done. The actual or intended loss is unusually difficult to identify in access device cases for a number of reasons: the offenses frequently involve the theft of large volumes of access devices; the offenses typically do not involve an explicit demand for a particular amount of money; and the offenses typically involve an intent to steal as much money as possible, without knowing the available amount. The Sentencing Guidelines have recognized these challenges since the beginning. The original guidelines directed courts to apply a minimum $100 loss for stolen credit cards. *See* USSG 2B1.1 (1987), Application Note 4 ("The loss includes any unauthorized charges made with stolen credit cards, but in no event less than $100 per card."). For most cases, the amount was increased from $100 to $500 after the Sentencing Commission conducted further research—which was required by Section 4 of the Identity Theft and Assumption Deterrence Act of 1998, Pub. L. 105–318(b)(1)—that directed it to ensure that the Sentencing Guidelines provided appropriate penalties for identity theft crimes (e.g., identity theft crimes involving credit cards). The Sentencing Commission's research at that time indicated that, with the exception of certain telecommunications access devices, the $100 loss estimate was insufficient. *See* USSG, Appendix C, Amendment 596 (2000).

And third, Application Note 3(F)(i) reflects the Commission's "authoritative" and "official" position, *see Kisor*, 139 S. Ct. at 2416, and it went through full notice-and-comment rulemaking. *See* 65 Fed. Reg. 26,880, 26,895 (May 9, 2000). The rule also implicates the Commission's substantive expertise and reflects the Commission's

"fair and considered judgment." *Kisor*, 139 S. Ct. at 2417. Accordingly, Application Note 3(F)(i) is a permissible, appropriate, and reasonable interpretation of § 2B.1.

### III. Argument in Support of a Guideline Sentence

The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 41 (2007). Although this Court may not presume that a guideline-range sentence is reasonable, the Sentencing Guidelines remain a significant and pivotal component of the sentencing process. *United States v. Delva*, 922 F.3d 1228, 1257 (11th Cir. 2019); *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) ("[W]hile we do not presume that a sentence falling within the guidelines range is reasonable, we ordinarily expect it to be so."). This Court, therefore, "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891–92 (2009).

Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed education or vocational training, medical care, or

other corrective treatment in the most effective manner. Birdsell's conduct, considered in conjunction with the sentencing factors set forth in 18 U.S.C. § 3553(a), calls for a guideline-sentence.

### A.   History and Characteristics of Defendant

Birdsell has a lengthy, and almost interrupted, history of fraud. At the age of 20, she was convicted of Simple Worthless Check. Doc. 33, ¶ 40. Her behavior escalated. In the ten years that followed, she racked up at least 17 convictions for crimes of dishonesty, including convictions for Forgery (three), Uttering Forged Instrument (three), Solicit to Obtain Property False Pretense (two), Larceny (two), Breaking and Entering, Possession of Stolen Goods/Property, Fraud-Impersonate/Use Personal ID Without Consent, Grand Theft (two), Criminal Use of Personal ID info-Victim Over 60 Years Old, and Fraudulent Use of a Credit Card. *Id.* at ¶¶ 41-51. Not considering the more than 20 arrests for fraud crimes listed in the "Other Arrests" section of the PSR (¶¶ 62-88), Birdsell's criminal history yields a criminal history score of 20 (¶ 56)—well beyond what is necessary to be qualified as the highest level of offender.

On certain occasions, Birdsell has been sentenced to lengthy terms of incarceration, including sentenced of eight months, 18 months, and 57 months. *Id.* at ¶¶ 47, 49, 51. These prior sentences, however, failed to deter her from criminal conduct. A guideline-sentence in this case would serve to deter this type of criminal conduct and protect the community.

### B. Nature and Circumstances of Offense

Birdsell's underlying offense conduct is consistent with her criminal history dating back to 2007, as outlined above. The instant scheme, however, was more far-reaching than ever before. Birdsell victimized at least 627 victims from all across central Florida, including Citrus, Hernando, Marion, and Sumter counties. Birdsell indiscriminately rifled through hundreds of victims mailboxes searching for anything she identified as valuable, and discarding what she did not. Some victims lost debit/credit cards, checks, and identification documents, and many others lost peace of mind. The offense is a serious one, and it deserves a serious sentence.

### IV. Conclusion

This Court should sentence Birdsell to a guideline-sentence of 72 months in this case. This sentence is reasonable because it reflects the seriousness of her crime, promotes respect for the law, and affords adequate deterrence to the criminal conduct.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:   *Carlton C. Gammons*
Carlton C. Gammons
Assistant United States Attorney
Florida Bar No. 85903
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
Email: Carlton.Gammons@usdoj.gov

U.S. v. Sarah Ann Birdsell                              Case No. 8:23-cr-210-CEH-AEP

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

                                                      *Carlton C. Gammons*
                                                      Carlton C. Gammons
                                                      Assistant United States Attorney
                                                      Florida Bar No. 85903
                                                      400 N. Tampa St., Ste. 3200
                                                      Tampa, FL 33602-4798
                                                      Telephone: (813) 274-6000
                                                      Facsimile: (813) 274-6358
                                                      Email: Carlton.Gammons@usdoj.gov